RECEIVED AND FILED
2017 MAR 28 PM 12: 50
U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

FILED
MAR 28 2017
SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re: ANTHONY THOMAS; WENDI THOMAS; AT EMERALD, LLC

Debtors

-----------------------------

ANTHONY THOMAS; WENDI THOMAS

Appellants

v.

KENMARK VENTURES, LLC

Appellee

BAP No.: **NV-16-1058-KuLJu**

*Bk.Ct. Appeal Reference#: 16-09*
Bankr. No.: 3:14-bk-50333
Adv. No.:   3:14-ap-05022
Chapter 7

March 28, 2017

## JUDGMENT

ON APPEAL from the United States Bankruptcy Court for Nevada - Reno.

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the judgment of the Bankruptcy Court is AFFIRMED.

### FOR THE PANEL,

Susan M Spraul
Clerk of Court
By: Vincent Barbato, Deputy Clerk

Date: March 28, 2017

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California (626) 229-7220
Appeals from all other Districts (626) 229-7225

## NOTICE OF ENTRY OF JUDGMENT

Date:     March 28, 2017

BAP No.:  **NV-16-1058-KuLJu**

RE:       ANTHONY THOMAS, WENDI THOMAS & AT EMERALD, LLC

TO;       Honorable U.S. Bankruptcy Judge Bruce T. Beesley
          U.S. Bankruptcy Court
          C. Clifton Young Federal Building and United States Courthouse
          300 Booth Street
          5th Floor
          Reno, NV 89502-1316

Dear Judge Bruce T. Beesley,

Enclosed for your information is a copy of the Bankruptcy Appellate Panel's disposition in an appeal from your court. This does not constitute the mandate. The mandate (a certified copy of the judgment) will issue according to Federal Rule of Appellate Procedure 41 and will be sent to the Bankruptcy Clerk. (Mandates generally issue 21 days from the entry of the judgement unless a timely motion for rehearing is filed.)

The parties have been served with a copy of this disposition.

Sincerely,


Susan M Spraul, BAP Clerk


By: Vincent Barbato, Deputy Clerk

Enclosure:

FILED

MAR 28 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re: ANTHONY THOMAS; WENDI THOMAS; AT EMERALD, LLC

Debtors

-------------------------------

ANTHONY THOMAS; WENDI THOMAS

Appellants

v.

KENMARK VENTURES, LLC

Appellee

BAP No.: NV-16-1058-KuLJu

Bk.Ct..Appeal Reference#: 16-09
Bankr. No.: 3:14-bk-50333
Adv. No.:   3:14-ap-05022
Chapter 7

March 28, 2017

## JUDGMENT

ON APPEAL from the United States Bankruptcy Court for Nevada - Reno.

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the judgment of the Bankruptcy Court is AFFIRMED.

FOR THE PANEL,

Susan M Spraul
Clerk of Court
By: Vincent Barbato, Deputy Clerk

Date: March 28, 2017

FILED

MAR 28 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NV-16-1058-KuLJu |
| ANTHONY THOMAS and WENDI THOMAS; AT EMERALD, LLC, | Bk. Nos.  3:14-bk-50333<br>          3:14-bk-50331<br>(Jointly Administered) |
| Debtors. | Adv. No.  3:14-ap-05022 |
| ANTHONY THOMAS; WENDI THOMAS, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| KENMARK VENTURES, LLC, | |
| Appellee. | |

Argued and Submitted on February 24, 2017
at Las Vegas, Nevada

Filed - March 28, 2017

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Chief Bankruptcy Judge, Presiding

Appearances:   Laury Miles Macauley argued for appellants; Wayne A. Silver argued for appellee.

Before: KURTZ, LAFFERTY and JURY, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Chapter 7[1] debtors Anthony and Wendi Thomas appeal from a judgment determining that Mr. Thomas' $4.5 million judgment debt owed to Kenmark Ventures, LLC, is nondischargeable under § 523(a)(2)(A). The Thomases argue on appeal that the bankruptcy court made insufficient findings to support its judgment and that the findings it did make were not adequately supported by facts in the record.

The bankruptcy court found, among other things, that Mr. Thomas fraudulently concealed certain facts regarding what is known as the "Thomas emerald." The emerald-related fraud findings had adequate support in the record and were sufficient by themselves to support the court's nondischargeability judgment. On that basis, we AFFIRM.

## FACTS

Mr. Thomas[2] was a major investor in Electronic Plastics, and he has conceded that he acted on behalf of Electronic Plastics from time to time. For instance, there is no genuine dispute that Electronic Plastics needed funding and that Thomas met with Kenmark's principal Kenneth Tersini in May and June of 2007 in

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Wendi Thomas did not directly participate in the underlying litigation or in the transactions from which the litigation arose. Furthermore, with the exception of the penultimate paragraph of this decision, this decision does not purport to address any concerns directly relating to her interests. Consequently, throughout the remainder of this decision, we refer to Mr. Thomas as if he were the sole appellant in this appeal.

2

furtherance of Electronic Plastics' desire to obtain funding from Kenmark. The funding was supposed to tide over Electronic Plastics until it started generating revenue from the sale of its technology product: a biometric "smartcard" with security features and applications that could be modified to suit the needs of individual commercial customers.

Kenmark eventually funded $6.1 million to Electronic Plastics over the course of roughly a year, beginning in June of 2007 and ending in May of 2008. Kenmark funded no less than $4.1 million of the $6.1 million between October 2007 and May 2008, after all of the fraudulent conduct complained of allegedly occurred.

Electronic Plastics ultimately was unable to generate any sales of its smartcard, and Kenmark demanded repayment of the $6.1 million. When neither Electronic Plastics nor Thomas repaid the funds, Kenmark sued Electronic Plastics, Thomas and others in state court.

Pursuant to a state court settlement, Mr. Thomas stipulated to entry of a $4.5 million judgment against himself and in favor of Kenmark if he did not timely make a $575,000 payment owed under the settlement. Thomas never made the $575,000 payment. After Thomas commenced his bankruptcy case, Kenmark obtained relief from the automatic stay to permit it to have the stipulated state court judgment entered. The stipulated judgment resolved the issues of Thomas' liability to Kenmark and the amount of that liability but left open the issue of whether

Thomas' debt to Kenmark was nondischargeable.[3]

According to Tersini, Thomas fraudulently concealed and affirmatively misrepresented a number of different matters. For purposes of our decision, the most important nondisclosures concerned a 21,000 carat uncut emerald, known as the "Thomas emerald." Tersini testified that Thomas offered the Thomas emerald as collateral to secure all of the money Kenmark lent and that Thomas executed two promissory notes, a security agreement and a security agreement addendum to document the secured loan transaction. On the other hand, Thomas ultimately claimed that the $6.1 million Kenmark funded to Electronic Plastics was meant to be an equity investment rather than a loan and that his signatures on the loan documents were forged.

The parties agree that they discussed the Thomas emerald and its value before funding occurred. They also agree that Thomas presented to Tersini an appraisal stating that the Thomas emerald was worth $800 million. According to Tersini, Thomas told him the Thomas emerald was given to him by the owners of a Brazilian mine in gratitude for his efforts in saving the mine by utilizing specialized boring techniques. Tersini further asserted Thomas never disclosed that the same appraiser who gave him the

---

[3] The original oral settlement agreement terms, stated in open court, provided for entry of judgment against Thomas on Kenmark's two fraud causes of action in the event of nonpayment of the settlement amount. The stipulation for entry of judgment provided for the same thing. Nonetheless, before holding trial on Kenmark's nondischargeability complaint, the bankruptcy court ruled that the stipulated state court judgment did not have any preclusive effect on any of the fraud or nondischargeability questions at issue in the nondischargeability litigation. This ruling has not been appealed.

1  $800 million appraisal a few months earlier had given him a
2  $400,000 appraisal for the same stone. Additionally, Thomas
3  later admitted that he paid $20,000 for the emerald. On yet
4  another occasion, he stated he paid $60,000 for it.
5      Tersini testified that he did not learn of the $400,000
6  appraisal or the various claimed purchase prices until well after
7  he loaned the $6.1 million to Electronic Plastics. He further
8  testified that, had he known about these facts before funding, he
9  would not have loaned any money against the Thomas emerald.
10     Other nondisclosures Kenmark complained of included: (1) the
11 fact that Electronic Plastics founder, Chief Executive Officer
12 and managing member Michael Gardiner was a convicted felon; and
13 (2) the fact that Electronic Plastics was in the midst of
14 litigation with a company called e-smart over ownership of the
15 technology used in the smartcard. The e-smart litigation had
16 caused Electronic Plastics to incur hundreds of thousands of
17 dollars in attorney's fees, and – as a result of the litigation –
18 Electronic Plastics decided to redesign its smartcard.
19     Thomas testified that Tersini was advised (orally and in
20 writing) of both the Gardiner conviction and the e-smart
21 litigation before the Kenmark funding occurred. On the other
22 hand, Tersini testified that he did not know about either of
23 these facts until after Kenmark had funded the full $6.1 million.
24     Kenmark also complained of affirmative misrepresentations,
25 particularly concerning the development status of the smartcard.
26 Tersini testified that Thomas advised him the smartcard was fully
27 functional and ready for manufacture. Tersini further maintained
28 that Thomas led him to believe that a Korean bank was ready to

sign an order for ten million smartcards and that Thomas' oral misrepresentations were bolstered by Electronic Plastics' business plan, which made similar claims. Thomas testified, in essence, that he was a mere conduit for information from Electronic Plastics to Tersini, that he was not knowledgeable about the technical aspects of the smartcard and that he relied on Electronic Plastics' technical experts to provide him with information regarding the development status of the smartcard. He further denied advising Tersini that a Korean bank was ready to place an order for 10 million smartcards.

After a four-day trial, the bankruptcy court orally rendered its findings of fact and conclusions of law in open court. The court stated the basic elements for establishing nondischargeable fraud, as set forth in Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000). The court then made a number of findings regarding the above-referenced nondisclosures.

The court suggested that the nondisclosures concerning the Thomas emerald and its value were the most important for purposes of its nondischargeability determination. In fact, of the roughly seven pages of hearing transcript comprising the court's findings, nearly four of those pages concern the issue of the loan and the pledging of the Thomas emerald as security.

The court specifically found that Thomas signed the notes, the security agreement, and the addendum to the security agreement - both personally and on behalf of Electronic Plastics - thereby securing their obligation to repay the monies Kenmark lent using the Thomas emerald as collateral. The bankruptcy

6

court opined that Thomas' forgery claim was inconsistent with his response to Kenmark's requests for admissions and with a letter his counsel Joseph Kafka sent Kenmark in response to Kenmark's demand for repayment of the $6.1 million loan. The forgery claim also was inconsistent with admissions in Thomas' answer to Kenmark's complaint.

The bankruptcy court also found that Thomas gave Tersini the $800 million appraisal for the emerald, but did not share with him the same appraiser's $400,000 appraisal, which was dated a few months before the $800 million appraisal. Additionally, the bankruptcy court noted that Thomas made a number of inconsistent statements regarding the purchase price he paid for the emerald (variously, $20,000 and $60,000), which in turn were inconsistent with statements he made to Tersini indicating that the emerald was a gift from the mine owners.

The bankruptcy court further found that Thomas failed to disclose Electronic Plastics principal Michael Gardiner's felony fraud conviction and its then-pending intellectual property litigation with e-smart.

In addition to the nondisclosures, the bankruptcy court found that Thomas presented to Tersini Electronic Plastics' business plan, which contained affirmative misrepresentations regarding the "commercial availability" of the smartcard and regarding Electronic Plastics' "current projects" (1) in Europe for a publicly-traded company; and (2) in Asia for South Korea's largest bank. The only other statement in the bankruptcy court's findings alluding to other affirmative misrepresentations was its rather nebulous comment that "[t]he biometric card was

7

unfortunately not developed or produced as quickly as Kenmark had anticipated, based on the representations made by Mr. Thomas." Hr'g Tr. (Feb. 8, 2016) at 5:18-20.

The bankruptcy court went on to discuss justifiable reliance and the facts in the record supporting its determination that Kenmark justifiably relied on Thomas' fraudulent conduct. However, there is no discussion of the fraud elements concerning Thomas' state of mind – whether he knew of the falsity of the misrepresentations when he made them and whether he made them with the intent to deceive.

The bankruptcy court entered its judgment determining that Thomas' $4.5 million judgment debt to Kenmark is nondischargeable under § 523(a)(2) on February 19, 2016, and Thomas timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I), and we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court commit reversible error when it determined that Thomas' $4.5 million judgment debt to Kenmark is nondischargeable under § 523(a)(2)(A)?

## STANDARDS OF REVIEW

Generally speaking, the dischargeability of a particular debt is a mixed question of law and fact, which we review de novo. Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037 (9th Cir. 2001). Even so, the bankruptcy court's findings made as part of its dischargeability ruling are reviewed for clear

error. Candland v. Ins. Co. of N. Am. (In re Candland), 90 F.3d 1466, 1469 (9th Cir. 1996); Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009), aff'd, 407 Fed.Appx. 176 (9th Cir. Dec. 27, 2010). Thus, whether a creditor has proven an essential element of a cause of action under § 523(a)(2)(A) is a factual determination reviewed for clear error. Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1283 (9th Cir. 1996); Am. Express Travel Related Servs. Co., Inc. v. Vinhnee (In re Vinhnee), 336 B.R. 437, 443 (9th Cir. BAP 2005).

"A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985). When factual findings are based on credibility determinations, we must give even greater deference to the bankruptcy court's findings. See Anderson, 470 U.S. at 575.

## DISCUSSION

The bankruptcy court correctly recited the general standard for finding nondischargeable fraud under § 523(a)(2)(A). This standard requires the following elements:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

9

1  In re Weinberg, 410 B.R. at 35 (citing In re Slyman, 234 F.3d at
2  1085).
3      On appeal, Thomas mainly complains that the bankruptcy court
4  made insufficient findings to support its nondischargeability
5  ruling and that the trial record was insufficient to support the
6  findings it did make. We will focus on the nondisclosures
7  pertaining to the Thomas emerald and its value because the
8  bankruptcy court's decision hinged on them. Thomas contends that
9  there was no evidence presented at trial from which the
10 bankruptcy court could have determined what the "true value" of
11 the emerald was at the time Kenmark funded Electronic Plastics,
12 so Kenmark failed to establish: (1) that Thomas made a false
13 statement regarding the emerald's value; and (2) that Thomas knew
14 this value statement was untrue at the time he made it.
15     Thomas misconstrues the nature of his "false statement" in
16 connection with the emerald's value. For purposes of finding
17 nondischargeable fraud, when the charged fraud concerns an
18 undisclosed fact, the undisclosed fact is treated as if the
19 debtor-defendant made an affirmative misrepresentation that the
20 undisclosed fact did not actually exist. Tallant v. Kaufman
21 (In re Tallant), 218 B.R. 58, 65 (9th Cir. BAP 1998) (citing
22 Restatement (Second) of Torts, § 551 (1976)). The Restatement
23 (Second) of Torts can be used to help define the metes and bounds
24 of fraud under § 523(a)(2)(A). Field v. Mans, 516 U.S. 59, 68-70
25 (1995); Apte v. Romesh Japra, M.D., F.A.C.C., Inc. (In re Apte),
26 96 F.3d 1319, 1324 (9th Cir. 1996). In relevant part,
27 Restatement (Second) of Torts, § 551 provides:
28     (1) One who fails to disclose to another a fact that he

> knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other **as though he had represented the nonexistence of the matter that he has failed to disclose**, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

Restatement (Second) of Torts § 551(1) (1977) (emphasis added).

Under Tallant, Apte and the Restatement (Second) of Torts, § 551, the nondisclosures of the $400,000 appraisal and the $20,000 purchase price were the equivalent of Thomas affirmatively representing that he did not have a $400,000 appraisal at the time he sent the $800 million appraisal to Kenmark and that he did not pay $20,000 for the emerald. Thomas indisputably knew both of these misrepresentations were untrue at the time he "made" them (i.e., at the time he failed to disclose the true facts). He admitted knowledge of both facts at the time the transaction was entered into.

While the bankruptcy court did not specifically find that Thomas failed to disclose facts regarding the emerald with the intent to deceive, the intent finding was implicit in the court's ruling. The court correctly stated the intent element and also held that Kenmark had established all of the elements for a nondischargeable debt under § 523(a)(2)(A) by a preponderance of the evidence. See In re Tallant, 218 B.R. at 66 (inferring an implicit finding from a similar bankruptcy court ruling); see also Wells Benz, Inc. v. United States ex rel. Mercury Elec. Co., 333 F.2d 89, 92 (9th Cir. 1964) ("whenever, from facts found, other facts may be inferred which will support the judgment, such inferences will be deemed to have been drawn.").

Meanwhile, the creditor typically is not required to prove

11

justifiable reliance when the fraud charged is premised upon an actionable nondisclosure. See In re Apte, 96 F.3d at 1323; In re Tallant, 218 B.R. at 67-69. Instead, justifiable reliance is presumed, so long as the undisclosed facts were material. Id.

As for causation, for the same reasons we construed the bankruptcy court's ruling to include an implicit finding of an intent to deceive, we similarly construe the ruling to include an implicit finding that Thomas' emerald-related nondisclosures induced Kenmark to loan $6.1 million to Electronic Plastics.[4] There was sufficient evidence in the record to support this implicit finding, inasmuch as Tersini testified that, had he known about the $400,000 appraisal and the $20,000 purchase price, he would not have loaned the funds to Electronic Plastics. Nor is there anything in the record to persuade us that the bankruptcy court's implicit causation finding was illogical, implausible or without support in the record.

This leaves us with two issues peculiar to fraudulent concealment cases: materiality and duty to disclose. With respect to materiality, a nondisclosure is not actionable under § 523(a)(2)(A) unless it was material. In re Apte, 96 F.3d at 1323. A fact is considered material if a hypothetical reasonable person would have considered it important to know before entering into the transaction. Id.; see also Shannon v. Russell (In re Russell), 203 B.R. 303, 312 (Bankr. S.D. Cal. 1996)

---

[4] While Apte and Tallant arguably could be read as entirely displacing the reliance and causation elements in the context of material nondisclosures, we elsewhere have held that this is not the case. See Hillsman v. Escoto (In re Escoto), 2015 WL 2343461, at *4 n.2 (Mem. Dec.) (9th Cir. BAP May 15, 2015).

12

(elaborating on materiality element and citing additional cases).

Here, the bankruptcy court found that the nondisclosures were "important", which was tantamount to a finding that they were material. Furthermore, we agree with this finding. A reasonable person securing a $6.1 million loan with the emerald would want to know that the same appraiser who appraised the emerald at $800 million had shortly before appraised it at $400,000. And a reasonable person also would want to know that the borrower only paid $20,000 for it.

Thomas further contends that he had no duty to disclose. We may look to the Restatement (Second) of Torts, § 551, for help in ascertaining whether a party to a transaction had a duty to disclose. In re Apte, 96 F.3d at 1324. Restatement § 551 provides in relevant part:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> > (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> >
> > (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
> >
> > (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
> >
> > (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
> >
> > (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the

13

    trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2) (1977).

  The bankruptcy court did not make any determination regarding Thomas' duty to disclose, nor is there anything in the bankruptcy court's decision suggesting that the court considered the issue. Nonetheless, on this record, the issue is straightforward enough that we can resolve it without remanding. See, e.g., In re Apte, 96 F.3d at 1324 (resolving duty to disclose issue even though bankruptcy court did not address it).

  We are convinced that Thomas' emerald-related nondisclosures fall squarely within clause (b) of Restatement (Second) of Torts § 551(2). That clause imposes a duty on a party to disclose additional facts about a matter when the party presents partial, incomplete or ambiguous facts that may mislead the adverse party into thinking that he or she has been told the whole truth about the matter. As explained in the Restatement, "[a] statement that is partial or incomplete may be a misrepresentation because it is misleading, when it [falsely] purports to tell the whole truth . . . . When such a statement has been made, there is a duty to disclose the additional information necessary to prevent it from misleading the recipient." Id. at cmt. g; see also Smith v. Duffey, 576 F.3d 336, 338 (7th Cir. 2009) (citing Restatement (Second) of Torts § 551(2)(b) and stating "often [the duty to disclose] arises in the absence of any special relationship - arises just because the defendant's silence would mislead the plaintiff because of something else that the defendant had said").

14

Without a doubt, when Thomas gave the $800 million appraisal to Tersini, it created the impression that the emerald was worth far more than Kenmark was considering lending to Electronic Plastics. This impression of value seemed complete on its face; in order to prevent it from misleading Kenmark, it was incumbent on Thomas to disclose the $400,000 appraisal and the $20,000 purchase price, so that Kenmark would have the whole truth regarding the indicia of value readily available to Thomas.

There is only one other issue Thomas has raised on appeal implicating the bankruptcy court's reliance on the emerald-related nondisclosures. Thomas argues that the bankruptcy court erred in finding that Kenmark's funding was a loan rather than an equity investment and erred in finding that Thomas agreed to secure the alleged loan with the emerald. The executed loan documents the bankruptcy court found to be genuine and to be signed by Thomas are wholly inconsistent with Thomas' claims. We acknowledge that some of the evidence presented at trial could have been viewed as supporting Thomas' forgery claims - namely Thomas' own unsubstantiated testimony. But the bankruptcy court obviously did not credit Thomas' testimony on this point, and the bankruptcy court's credibility finding was supported by a number of inconsistencies in the factual positions Thomas took over the course of the nondischargeability litigation and in other litigation. At bottom, the conflicting evidence presented might have enabled the court to reasonably view the transaction consistent either with Tersini's testimony or with Thomas' testimony. The bankruptcy court's choice between those two permissible views of the evidence was not clearly erroneous.

Anderson, 470 U.S. at 574.

In sum, the bankruptcy court did not err in determining the $4.1 million judgment debt nondischargeable under § 523(a)(2)(A) based on the emerald-related nondisclosures. Analysis of the bankruptcy court's findings regarding the other nondisclosures and misrepresentations would not add significant additional weight to our decision. In our view, those other alleged nondisclosures and misrepresentations were cumulative of and incidental to the bankruptcy court's principal fraud finding, which relied on the emerald-related nondisclosures.

Unrelated to his other arguments on appeal, Thomas complains that the bankruptcy court's judgment incorrectly determined that Thomas' judgment debt also is nondischargeable as against Thomas' wife. We see nothing on the face of the judgment to support this interpretation. That being said, we give significant deference to the bankruptcy court's interpretation of its own orders. Rosales v. Wallace (In re Wallace), 490 B.R. 898, 906 (9th Cir. BAP 2013). If Thomas really believes that the judgment is susceptible to his proffered interpretation, he should seek relief from the bankruptcy court in the first instance, in the form of a motion to correct or interpret the judgment.

## CONCLUSION

For the reasons set forth above, the bankruptcy court's nondischargeability judgment is AFFIRMED.

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California (626) 229-7220
Appeals from all other Districts (626) 229-7225

### NOTICE OF ENTRY OF JUDGMENT

**BAP No.:** NV-16-1058-KuLJu

**RE:** ANTHONY THOMAS; WENDI THOMAS & AT EMERALD, LLC

A separate Judgment was entered in this case on **03/28/2017**.

**BILL OF COSTS:**
Bankruptcy Rule 8021(c) provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken. 9th Cir. BAP Rule 8021-1

**ISSUANCE OF THE MANDATE:**
The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

**APPEAL TO COURT OF APPEALS:**
An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $505 filing fee and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

### CERTIFICATE OF MAILING

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

By: Vincent Barbato, Deputy Clerk

Date: March 28, 2017